UNITED STATES COURT OF INTERNATIONAL TRADE

---

GOLABS INC. D/B/A GOTRAX,

      Plaintiff,

      v.                            No. 25-cv-00003

UNITED STATES,

      Defendant.

---

## COMPLAINT

Plaintiff GoLabs Inc., d/b/a GOTRAX, for its Complaint in this action, does hereby state and allege as follows:

## CAUSE OF ACTION

1. Plaintiff brings this action pursuant to Section 515 of the Tariff Act of 1930, as amended, 19 U.S.C. §1515, to challenge Customs' denial of plaintiff's protest against the classification, in liquidation, of certain toy hoverboards.

## JURISDICTION

2. This Court has exclusive subject matter jurisdiction of this action pursuant to 28 U.S.C. §1581(a).

3. All liquidated duties, taxes and fees were paid prior to the commencement of this action.

## PARTIES

4. Plaintiff GoLabs Inc., d/b/a GOTRAX is a United States corporation headquartered in Carrollton, Texas. It was the importer of record of the merchandise which is the subject of this action, and paid the liquidated duties, taxes and fees. It is the real party in interest in this action.

5. Defendant United States of America is the Federal defendant. The denial of plaintiff's protest in this action was done by defendant's agency United States Customs and Border Protection, a unit of the Department of Homeland Security.

## STATEMENT OF FACTS

6. The merchandise which is the subject of this action consists of certain children's toys of a kind known as "dicycles."

7. A "dicycle" (also known as a diwheel) is a device with two wheels side by side, unlike single-track vehicles such as motorcycles and bicycles, which have one wheel followed by another.

8. The Oxford English Dictionary defines a "dicycle" as "[a] pedal-powered vehicle with two large wheels placed parallel to one another, instead of being in line as in a bicycle; esp. a vehicle of the design devised by E. C. F. Otto."

9. The Merriam-Webster Dictionary defines a "dicycle" as "a velocipede having the two wheels parallel instead of in the same line."

10. The term "dicycle" has been in use since at least 1877."

11. More recently, dicycles have been equipped with electric motors for propulsion and in some cases, gyroscopic balancing technology. Segway, a producer of motorized vehicles with gyroscopic balancing technology, is recognized as a manufacturer of dicycles.

12. The merchandise which is the subject of this case consists of electrically-powered dicycle with gyroscopic self-balancing electric scooters, which are marketed using the name "hoverboards".

13. The term "hoverboard" is a misnomer. The term refers to an anti-gravity skateboard device used by the protagonist Marty McFly in the 1989 Robert Zemeckis film "Back to the Future Part II." Such devices have not yet been invented or commercialized. For purposes of this

pleading, however, we will refer to the products by their commercial designation of "hoverboards".

14. Plaintiff's hoverboards are compact motorized toy devices with two wheels connected by a central platform on which the rider stands.

15. The hoverboard platform is equipped with sensors and gyroscopic technology which provide balance and allows for responsive movement. Riders control the hoverboard by shifting their body weight to initiate forward or backward motion, or to initiate turns.

16. Plaintiff's hoverboards have a top speed of 6.2 miles per hour, and support a maximum rider weight of 176 pounds.

17. Plaintiff's hoverboards have a motor powered by a 25.2-volt lithium-ion battery, which has a charging time of approximately five (5) hours.

18. Plaintiff's hoverboards have a range of approximately 3.1 miles per charge, with variations depending on the weight of the rider.

19. The electrical output of the hoverboard's motor is rated at 200 watts.

20. The hoverboards are designed for operation on flat and even surfaces.

21. The hoverboards feature a lightweight plastic construction with brightly colored decorative finishes that are visually appealing to younger users.

22. The hoverboards feature LED indicators which communicate information to the rider concerning certain device functions, including signaling low battery levels, overheating warnings and operational status.

23. The hoverboards operate in both a "self-balancing mode" which automatically stabilizes the platform when powered "on" and a "non-self-balancing mode" suitable for stationary

activities or instances where the hoverboard is used with compatible accessories, such a karting kit.

24. The operational controls are intuitive for all riders regardless of skill or experience. Acceleration is achieved by gently pressing own with the toes, deceleration is achieved by lifting the toes, and turning by applying pressure with the user's foot.

25. The subject hoverboards feature an overheat alarm that reduces speed and eventually shuts off the motor if excessive heat is detected. Low battery warnings are communicated through beeping sounds and flashing red LED lights.

26. The user manual for the hoverboard warns that the hoverboard is not waterproof, and that damage caused by water is not covered by the manufacturer's warranty. This limitation makes the device unsuited for most transportation functions.

27. The hoverboard cannot be used safely or effectively on rough or uneven surfaces, or surfaces where obstacles may be encountered.

28. Plaintiff's hoverboards are exclusively marketed for use by children and teenagers.

29. Plaintiff's hoverboards are properly considered "wheeled" because they are equipped with wheels and move or function by means of wheels. Their two motorized wheels are the device's principal functional feature.

30. The hoverboards are primarily designed and used for pleasurable diversion by children and teenagers.

31. The hoverboards are primarily sold in the toy departments of retail stores throughout the United States.

32. The hoverboards are primarily designed and used for pleasurable diversion rather than for practical or utilitarian purposes.

33. Plaintiff's hoverboards are generally marketed by retailers such as Walmart at retail prices ranging from $88 to $183.

34. The Consumer Product Safety Commission regulates hoverboards as toys, and has issued multiple safety advisories focused on child-specific risks associated with hoverboards.

## COUNT I

35. Paragraphs 1 through 35 are incorporated by reference as though fully set forth herein.

36. Customs and Border Protection (CBP) classified the hoverboards in liquidation under subheading 8711.60.0050, Harmonized Tariff Schedule of the United States ("HTSUS"), a provision for "Motorcycles (including mopeds) and cycles fitted with an auxiliary motor, with or without side-cars; side-cars;  * * * With electric motors for propulsion; of an output not exceeding 250W." Goods so classifiable are duty free; however, as the hoverboard is a Product of China, CBP assessed in liquidation 25% ad valorem retaliatory tariff pursuant to subheading 9903.88.02, HTSUS.

37. The hoverboards are primarily used for the amusement of children and teenagers, and their use as a pleasurable diversion exceeds any practical or utilitarian use.

38. The hoverboards belong to a class or kind of merchandise known throughout the United States as "wheeled toys". The principal use of this class or kind of merchandise is for the amusement and pleasurable diversion of children and teenagers.

39. The hoverboards are properly classified under subheading 9503.00.00.90, HTSUS, which provides for "Tricycles, scooters, pedal cars and similar wheeled toys; dolls' carriages; dolls, other toys; reduced scale models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof; Other", and are unconditionally duty free.

40. Note 1 to Section XVII of the HTSUS, which is the best evidence of its contents provides that Section XVII, which includes Heading 8711, HTSUS, does not include articles of heading 9503, HTSUS

41. The hoverboards are children's cycles.

42. The hoverboards are not bicycles.

43. Note 4 to Chapter 87 HTSUS, which is the best evidence of its contents, provides that "Heading 8712 includes all children's bicycles. Other children's cycles fall in heading 9503, HTSUS.."

44. Because Plaintiff's hoverboards are "other children's cycles", they are precluded from classification under Chapter 87, HTSUS.

45. The hoverboards are properly classifiable under subheading 9503.00.0090, HTSUS and are free of duty.

## COUNT II

46. Paragraphs 1 through 46 of this Complaint are incorporated by reference, as though fully set forth herein.

47. In the event the hoverboards are held to be classifiable in subheading 8711.60.0050, HTSUS, they qualify for the temporary exception from Section 301 tariffs set out in US Note 20 (ttt)(ii)(31) to Chapter 99, HTSUS, which provides for "Motorcycles with electric power for propulsion, each of a power not exceeding 1,000 W (described in statistical reporting numbers 8711.60.0050 or 8711.60.0090, effective July 1, 2019; described in statistical reporting number 8711.60.0000, effective prior to July 1, 2019)"

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Court enter judgment in its favor an enter an order directing the appropriate Customs officer to reliquidate the subject entries of merchandise free of duty; and refunding to plaintiff all excess duties, taxes and fees, with interest as provided by law; and –

Providing plaintiff such further and additional relief as this Court may deem just and appropriate.

Respectfully submitted,

/s/ John M. Peterson
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
NEVILLE PETERSON LLP
*Counsel for Plaintiff*
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: February 14, 2025